UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNX WHOLE LOAN ACQUISITION LLC,<br><br>*Plaintiff*,<br><br>-against-<br><br>CALIBER HOME LOANS, INC., NEW RESIDENTIAL INVESTMENT CORP. (n/k/a RITHM CAPITAL CORP.), and NEWREZ LLC,<br><br>*Defendants*. | Case No. 1:25-cv-02948<br><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
NEW RESIDENTIAL INVESTMENT CORP. AND NEWREZ LLC'S
MOTION TO DISMISS**

Richard Jacobsen
Thomas N. Kidera
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-5000
Emails: rjacobsen@orrick.com
        tkidera@orrick.com

Aaron M. Rubin
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, California 92614
Telephone: (949) 567-6700
Email: amrubin@orrick.com

*Attorneys for Defendants New Residential
Investment Corp. and NewRez LLC*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD................................................................................................................ 4

ARGUMENT............................................................................................................................ 6

I.      Rithm Bought Only Caliber Stock, Rather Than Its Assets, Through The SPA, Thus Rendering Lynx's Successor Liability Theories Inapplicable ................................. 6

II.     Even Assuming That Rithm Or NewRez Could Be Held Liable Under A Successor Theory, Lynx's Claims Still Fail ...................................................................... 8

      A.      Neither Rithm Nor NewRez Explicitly Or Implicitly Assumed Caliber's Liabilities ...................................................................................................... 8

          i.      The Terms Of The SPA Demonstrate That Caliber's Liabilities Remained With Caliber.......................................................................... 8

          ii.     Lynx Has Not Adequately Pleaded That NewRez Expressly Or Impliedly Assumed Caliber's Liabilities ................................................. 12

      B.      Lynx Fails To Plead The Continuity Of Ownership Required To Sustain Its De Facto Merger And Mere Continuation Theories Of Successor Liability....................................................................................................... 14

          i.      There Is No Continuity Of Ownership Between Caliber's Previous Owners And Rithm ................................................................................ 15

          ii.     There Is No Continuity Of Ownership Between Caliber And NewRez................................................................................................. 17

CONCLUSION...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abundance Partners LP v. Quamtel, Inc.*,
840 F. Supp. 2d 758 (S.D.N.Y. 2012).......................................................................................6, 7

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*,
122 F. 3d 130 (2d Cir. 1997)......................................................................................................7

*Arch Specialty Ins. Co. v. Payne*,
No. 24-1274, 2025 WL 1416607 (2d Cir. May 16, 2025) ........................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................4, 13, 18

*Battino v. Cornelia Fifth Ave., LLC*,
861 F.Supp.2d 392 (S.D.N.Y. 2012).............................................................................9, 14, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................4

*Byrd v. City of N.Y.*,
2005 WL 1349876 (2d Cir. June 8, 2005) .................................................................................2

*Cargo Partner AG v. Albatrans, Inc.*,
352 F.3d 41 (2d Cir. 2003)..................................................................................................5, 6, 7

*Chambers v. Time Warner*,
282 F.3d 147 (2d Cir. 2002)....................................................................................................2, 9

*Chen v. Matsu Fusion Restaurant, Inc.*,
No. 19-CV-11895, 2022 WL 3018105 (S.D.N.Y. July 29, 2022) ............................................5

*City of New York v. Charles Pfizer & Co., Inc.*,
260 A.D.2d 174 (1st Dep't 1999) ..............................................................................11, 13, 16

*Coty Inc. v. Excell Brands, LLC*,
277 F.Supp.3d 425 (S.D.N.Y. 2017)..........................................................................................8

*Deluca v. Portland Orthopaedics Ltd.*,
No. 2:15-cv-05562, 2017 WL 6001781 (E.D.N.Y. Dec. 2, 2017)............................................9

*Descalfani v. Pave-Mark Corp.*,
No. 07 Civ. 4639, 2008 WL 3914881 (S.D.N.Y. Aug. 22, 2008) ......................................9, 15

*Doktor v. Werner Co.*,
    762 F. Supp. 2d 494 (E.D.N.Y. 2011) ....................................................................15

*Douglas v. Stamco*,
    363 F. App'x 100 (2d Cir. 2010) .........................................................................14

*Golub v. Kidder, Peabody & Co., Inc.*,
    No. 89CIV5903, 2000 WL 1024688 (S.D.N.Y. July 25, 2000) ...........................................6, 7

*Jasper & Black, LLC v. Carolina Pad Co., LLC*,
    No. 10 Civ. 3562, 2012 WL 413869 (S.D.N.Y. Feb. 9, 2012) ..........................................15, 16

*John Deere Shared Servs., Inc. v. Success Apparel LLC*,
    No. 15–CV–1146, 2015 WL 6656932 (S.D.N.Y. Oct. 30, 2015)...........................................16

*Klumpp v. Bandit Indus., Inc.*,
    113 F. Supp. 2d 567 (W.D.N.Y. 2000) ....................................................................16

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)...........................................................................2, 9, 10

*Ladjevardian v. Laidlaw-Coggeshall, Inc.*,
    431 F. Supp. 834 (S.D.N.Y. 1977) .................................................................11, 12, 13

*Marenyi v. Packard Press Corp.*,
    No. 90–CV–4439, 1994 WL 16000129 (S.D.N.Y. June 9, 1994) .....................................11, 13

*New York v. Nat'l Serv. Indus., Inc.*,
    460 F.3d 201 (2d Cir. 2006).............................................................................5, 15

*Permasteelisa, S.p.A. v. Lincolnshire Mgt., Inc.*,
    793 N.Y.S.2d 16 (1st Dept. 2005) ..........................................................................8

*In re Perrigo Co. PLC Sec. Litig.*,
    435 F.Supp.3d 571 (S.D.N.Y. 2020)........................................................................10

*Priestley v. Headminder, Inc.*,
    647 F.3d 497 (2d Cir. 2011)...........................................................................14, 15

*Ris v. Finkle*,
    561 N.Y.S.2d 499 (Sup. Ct., N.Y. Cnty. 1989) ..............................................................8

*Shaoxing Daqin Import & Export Co., Ltd. v. Notations, Inc.*,
    No. 19-cv-2732, 2019 WL 4198767 (S.D.N.Y. July 30, 2019)...............................................12

*Town of New Windsor v. Avery Dennison Corp.*,
    No. 10–CV–8611, 2012 WL 677971 (S.D.N.Y. Mar. 1, 2012)...............................................10

*Vullo v. Park Ins. Co.*,
2020 NY Slip Op 51075(U) (Sup. Ct., N.Y. Cnty. 2020)..........................................................8

**Statutes**

Del. Code. Ann. tit. 8, § 278 .................................................................................................3, 11, 13

**Other Authorities**

15 Fletcher's Cyclopedia Corporations § 7122 ................................................................................5

15 Fletcher's Cyclopedia Corporations § 7124 ..............................................................................12

Accounting Standards Codification 450-20-25-2 ...........................................................................10

American Institute of Certified Public Accountants Statement on Standards for
Accounting and Review Services § 100.04 ...............................................................................8

Fed. R. Civ. P. 12(b)(6).....................................................................................................................1

Fed. R. Civ. P. 8................................................................................................................................4

Fed. R. Evid. 21 ............................................................................................................................2, 9

Defendants New Residential Investment Corp. (n/k/a Rithm Capital Corp.) ("Rithm") and NewRez LLC ("NewRez") (together, the "New Defendants") submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the First Amended Complaint with prejudice filed by Plaintiff Lynx Whole Loan Acquisition LLC ("Plaintiff" or "Lynx").

## PRELIMINARY STATEMENT

Lynx initially brought this case against Caliber Home Loans, Inc. ("Caliber") alleging that Caliber breached their agreement by failing to properly service mortgage loans Caliber sold to Lynx.  Upon learning of Caliber's dissolution, Lynx cast about for an entity to hold responsible for Caliber's actions.  It settled upon the New Defendants:  Rithm acquired Caliber's stock in an April 2021 transaction, and NewRez who is Rithm's wholly-owned subsidiary and was not a party to the April 2021 transaction.  Despite amending its allegations in an attempt to bring in these new defendants, Lynx fails to plead a viable claim against either Rithm or NewRez.  Lynx repeatedly quotes, references, and cites the Stock Purchase Agreement (the "SPA") that permitted Rithm to acquire Caliber's stock, but fails to appreciate the SPA's express terms.  A plain reading of the SPA establishes that Rithm purchased only Caliber's stock, not its assets or legal liabilities; as a result, the two entities remain separate.  To disregard the corporate form, Lynx would need to plead facts that would satisfy the rigorous requirements of piercing the corporate veil—but does not even attempt to do so here.

Instead, Lynx tries to argue that Rithm and NewRez are liable for Caliber's alleged breach of contract under various successor-liability theories pertaining to asset purchases, but those theories are categorically inapplicable to purchases of equity like the transaction at issue here. Even setting this dispositive threshold problem aside, Lynx's arguments rely, not on anything in

the SPA, but on a mischaracterization of statements made by Rithm in its SEC filings and investor presentations.  Thus, Lynx claims that Rithm explicitly and implicitly assumed Caliber's liability but only makes such allegations by completely ignoring the language of the SPA and the fact that Caliber still exists and remains responsible for its liabilities.  Lynx next alleges almost in passing that NewRez implicitly assumed Caliber's liabilities but fails to plead any fact suggesting that NewRez has said or done anything that would indicate it intended to assume such liabilities.  Lynx then tries to claim that there was a *de facto* merger between Caliber and Rithm/NewRez, or that NewRez and Rithm are a mere continuation of Caliber.  But Lynx fails to allege any continuity of ownership between Caliber's previous owners and Rithm or NewRez to establish successor liability on these theories.  Lynx's claims against the New Defendants must therefore be dismissed.

## BACKGROUND

Caliber originates and services mortgage loans.  Am. Compl. ¶ 16.  Lynx purchased $1.769 billion in loans from Caliber via two separate transactions that closed on July 1, 2021, and August 2, 2021.  *Id.* ¶ 58.  Caliber continued to service the loans before ultimately resigning and terminating its agreement with Lynx in November 2022.  *See id.* ¶ 128.

On April 14, 2021, Rithm and Caliber's previous owner LSF Pickens Holdings, LLC ("LSF Pickens") entered into a Stock Purchase Agreement whereby Rithm would acquire all outstanding shares of the common stock of Caliber from LSF Pickens.[1]  In exchange, Rithm paid LSF Pickens

---

[1] The SPA may be considered on this motion to dismiss as a document Lynx incorporated it into its Amended Complaint by reference.  *See* Am. Compl. ¶¶ 17, 103-06, 136-37; *see also* Fed. R. Evid. 21; *Chambers v. Time Warner*, 282 F.3d 147, 152-54 (2d Cir. 2002) (finding agreements referenced in complaint were integral to the complaint).  Moreover, because Rithm filed the SPA with the U.S. Securities and Exchange Commission, the SPA is subject to judicial notice for the separate and additional reason that it is a publicly filed document.  *See Byrd v. City of N.Y.*, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) ("[M]aterial that is a matter of public record may be considered in a motion to dismiss."); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.

$1.675 billion in cash. *See* Ex. 1 (SPA) § 2.3. By the terms of the SPA, LSF Pickens released Rithm from any claims "arising out of, relating to or resulting from the organization, management or operation of the businesses of [Caliber] and its Subsidiaries on or prior to the Closing Date," which was in August 2021. *Id.* § 10.2(b); *see also* Am. Compl. ¶ 59 (noting the SPA closed in August 2021). Nonetheless, the SPA explicitly provides that certain liabilities will remain with Caliber:

> [T]his Section 10.2(b) shall not release [Caliber] or its Subsidiaries from specific obligations under any servicing and securitization agreements and other related agreements among [Caliber] and its Subsidiaries, on the one hand, and any Seller Releasor, on the other hand, owed to the Seller Releasors in connection with the valid performance of the obligations of the parties thereunder or any bona fide third party claims in respect thereof not brought by or on behalf of or for the benefit of any Seller Releasor.

Ex. 1 § 10.2(b).[2]

Over a year later, on November 1, 2022, Caliber entered its Plan of Complete Liquidation and Dissolution (the "Dissolution Plan"). *See* Ex. 2 (Dissolution Plan). Despite the entry of its Dissolution Plan, under Delaware law, Caliber will continue to operate as a business for three years. *See* Del. Code. Ann. tit. 8, § 278. In addition, pursuant to the terms of the Dissolution Plan, and consistent with Delaware law, Caliber must:

> Make such provision as will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the Company or that have not arisen but that, based on facts known to the Company or Parent, are likely to arise or to become known to the Company or Parent within ten (10) years after the Effective Date.

Ex. 2 § 4(a)(iii); *see* Del. Code. Ann. tit. 8, § 281(b).

---

1991) (courts may "take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'").

[2] The SPA defines "Seller Releasors" as LSF Pickens and "its Related Parties and their respective heirs, Representatives, successors and assigns[.]" *Id.*

On April 9, 2025, Plaintiff filed its Complaint against Caliber alleging two breach of contract claims.  Dkt. No. 1 ("Compl.") ¶¶ 98-112.  Plaintiff's breach of contract claims arise out of the Mortgage Loan Purchase, Sale, and Servicing Agreement (the "Agreement") that it entered into with Caliber on December 30, 2020, and the subsequent amendments thereto.  *Id.* ¶ 1 & n.1. After Caliber filed its Answer on June 9, 2025, Plaintiff filed an Amended Complaint on June 30, 2025.  Dkt. No. 13.  The Amended Complaint added the New Defendants to this action by asserting a successor liability claim against them based on Rithm's acquisition of Caliber's stock.  Dkt. No. 15 ("Am. Compl.").

Plaintiff's theory of successor liability is based on its allegations that Rithm and its preexisting wholly-owned subsidiary NewRez, a mortgage originator and servicing platform, assumed and acquired all of Caliber's liabilities through the SPA, or, in the alternative, that there was continuity of ownership from Caliber to Rithm and/or NewRez.  *Id.* ¶ 137-39.  For the reasons set forth below, Plaintiff's Amended Complaint should be dismissed as to the New Defendants because Plaintiff has failed to assert allegations sufficient to pierce the corporate veil as to either Defendant, or to show that the New Defendants are indeed Caliber's successors.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although Fed. R. Civ. P. 8 "does not require 'detailed factual allegations'", it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice", nor does "'a formulaic recitation of the elements of a cause of action . . ..'" *Id.*  (citing *Twombly*, 550 U.S. at 555).

4

"Under New York law, there are at least three ways in which a corporation can acquire the business of another:  The purchaser can buy the seller's capital stock, it can buy the seller's assets, or it can merge with the seller to form a single corporation."  *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44-45 (2d Cir. 2003).[3]  "In the first case, the purchaser does not become liable for the seller's debts unless the stringent requirements for piercing the corporate veil are met."  *Id.*

Even in the second case—a purchase of the seller's assets—the buyer "is generally not liable for the seller's liabilities."  *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006); *see also* 15 Fletcher's Cyclopedia Corporations § 7122 ("The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor.").  If a buyer of a corporation purchases its assets, rather than its capital stock, it can be held liable as a successor but only if it falls within one of four exceptions:  "(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations."  *Nat'l Serv. Indus.*, 460 F.3d at 209.  Accordingly, to plausibly plead successor liability, a plaintiff must put forth allegations sufficient to show that one of the exceptions applies.  *See Chen v. Matsu Fusion Restaurant, Inc.*, No. 19-CV-11895, 2022 WL 3018105, at *2 (S.D.N.Y. July 29, 2022) ("[A]lthough successor liability is not a separate cause of action, a plaintiff must actually plead allegations of successor liability in the complaint." (citation modified)).

---

[3] The New Defendants agree with Lynx's assertion in its Response to the New Defendants' Pre-Motion Letter (Lynx Resp.) that New York law applies.  Lynx Resp. at 1.

**ARGUMENT**

Lynx's attempts to hold Rithm and NewRez liable for Caliber's alleged breach of contract fail as a matter of law. First, because the SPA specifically provides that Rithm acquired only Caliber's stock, Rithm and NewRez cannot be held liable under any successor-liability theory; Lynx would need to meet the stringent standard for piercing the corporate veil, which Lynx could not show and does not even attempt to plead. But even assuming that a theory of successor liability was potentially applicable to Rithm's purchase of Caliber, Lynx has failed to plead a viable claim under any of the three successor liability doctrines that it has invoked.

**I.**   **Rithm Bought Only Caliber *Stock*, Rather Than Its Assets, Through The SPA, Thus Rendering Lynx's Successor Liability Theories Inapplicable.**

As Lynx itself pleads in the Amended Complaint, the SPA by its plain terms was an agreement for Rithm to purchase Caliber's common stock, not its assets. Am. Compl. ¶ 103 (quoting SPA). Under long-established New York law, Caliber therefore retained its liabilities, rather than transferring them to Rithm. *See Cargo Partner*, 352 F.3d at 45; *Golub v. Kidder, Peabody & Co., Inc.*, No. 89CIV5903, 2000 WL 1024688, at *4 (S.D.N.Y. July 25, 2000) ("Where a corporation is acquired by the purchase of all of its outstanding stock, the corporate entity remains intact and retains its liabilities, despite the change of ownership."); *cf. Arch Specialty Ins. Co. v. Payne*, No. 24-1274, 2025 WL 1416607, at *1 (2d Cir. May 16, 2025) (discussing the "accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners"). Lynx's attempt to plead that Rithm is Caliber's successor is therefore simply inapplicable as a threshold matter, because the successor-liability doctrines do not apply to stock acquisitions. *See Abundance Partners LP v. Quamtel, Inc.*, 840 F. Supp. 2d 758, 769 (S.D.N.Y. 2012) ("[E]ven if Plaintiff

6

offered sufficient evidence to prove that there had been a de facto merger between the two corporations, its contention would have to be rejected, because the de facto merger doctrine is inapplicable in an equity purchase situation.").

Because the SPA provided for the transfer of stock, not assets, the only way for Lynx to hold Rithm (or its subsidiary NewRez) liable for Caliber's liabilities is to pierce the corporate veil. *See Golub*, 2000 WL 1024688, at *4 ("Because [the buyer] purchased the stock, not the assets of [the company], which remained an ongoing concern, the relevant inquiry in determining whether [the buyer] is responsible for [the company's] debts and liabilities is not whether [the buyer] is [the company's] 'successor,' but whether these two entities' separate corporate structures should be disregarded under the doctrine of corporate veil-piercing."); *see also Cargo Partner*, 352 F.3d at 45; *Abundance Partners*, 840 F. Supp. 2d at 769. And to pierce the corporate veil, Lynx must "make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Golub*, 2000 WL 1024688, at *3 (citation modified) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F. 3d 130, 134 (2d Cir. 1997)).

Here, Lynx has not attempted to plead a basis for piercing the corporate veil. It neither alleges that Rithm exercised complete domination over Caliber, nor that such domination was used to commit a wrong against Lynx. Similarly, Lynx does not lodge any veil-piercing allegations against NewRez. Because Lynx fails to make any allegations that Caliber's corporate veil should be pierced in order to hold either Rithm or NewRez liable, its claims against Rithm and NewRez must be dismissed.

II.    **Even Assuming That Rithm Or NewRez Could Be Held Liable Under A Successor Theory, Lynx's Claims Still Fail.**

Setting aside Lynx's mistaken invocation of successor liability theories that are inapplicable to equity purchases, Lynx fails to plead a viable theory of successor liability even under the standards applicable to asset purchases.  None of the three successor liability exceptions that Lynx attempts to satisfy are applicable here:  Lynx does not adequately allege an explicit or implicit assumption of liability, nor does it adequately allege a de facto merger or continuity of ownership necessary to treat Rithm and NewRez as an extension of Caliber.

A.    **Neither Rithm Nor NewRez Explicitly Or Implicitly Assumed Caliber's Liabilities.**

i.    *The Terms Of The SPA Demonstrate That Caliber's Liabilities Remained With Caliber.*

Lynx alleges that Rithm "expressly and impliedly assumed and acquired all of Caliber's liabilities through the SPA."  Am. Compl. ¶ 137.  But rather than looking to the actual terms of the SPA—which, notably, do *not* state that Rithm acquired Caliber's liabilities—Lynx relies on a single ambiguous statement in a non-audited financial statement to plead its theory of successor liability.[4]  Am. Compl. ¶ 104.

---

[4] A non-audited (or unaudited) financial statement is one that has not been examined or verified by a licensed independent auditor and is often compiled by a company's accounting and finance functions for internal use.  *See*, *e.g.*, *Ris v. Finkle*, 561 N.Y.S.2d 499, 500-01 (Sup. Ct., N.Y. Cnty. 1989) (citing the American Institute of Certified Public Accountants Statement on Standards for Accounting and Review Services § 100.04).  Given the unverified, illustrative nature of non-audited financial statements, courts routinely hold that they are unreliable.  *See*, *e.g.*, *Coty Inc. v. Excell Brands, LLC*, 277 F.Supp.3d 425, 466-67 (S.D.N.Y. 2017) (declining to consider unaudited financial statements because they are not trustworthy or reliable); *Permasteelisa, S.p.A. v. Lincolnshire Mgt., Inc.*, 793 N.Y.S.2d 16, 17 (1st Dept. 2005) (reliance on unaudited financial statement was unreasonable); *Vullo v. Park Ins. Co.*, 2020 NY Slip Op 51075(U), at *5 (Sup. Ct., N.Y. Cnty. 2020) (declining to consider unaudited financial statement "as the basis for any finding of solvency as an insurer may not rely on unaudited financial statements to prove solvency") (citation omitted); *Ris*, 561 N.Y.S.2d at 501 (plaintiff's reliance on unaudited financial statement was unjustified).

8

The SPA contains specific clauses assigning parties certain claims and releasing parties from certain liabilities, such as providing that Caliber's prior owner LSF Pickens releases Rithm of "any and all Actions, causes of action, demands, obligations, Losses, debts and dues whatsoever" arising out of "the organization, management or operation of the businesses of [Caliber] and its Subsidiaries on or prior to the Closing Date . . .." Ex. 1 § 10.2(b). New York courts routinely find that where, as here, a purchase agreement expressly assigns certain liabilities but does not assign the seller's liabilities to the purchaser, the agreement does not create successor liability. *See, e.g.*, *Battino v. Cornelia Fifth Ave., LLC*, 861 F.Supp.2d 392, 401 (S.D.N.Y. 2012) ("[I]n light of the provisions of the APA setting forth which liabilities were and were not transferred, there can be no dispute that [the successor] did not expressly or impliedly assume [the predecessor's] liabilities[.]" (citation modified)); *Descalfani v. Pave-Mark Corp.*, No. 07 Civ. 4639, 2008 WL 3914881, at *4 (S.D.N.Y. Aug. 22, 2008) ("This argument is frivolous since [the successor] expressly did not assume and [the predecessor] expressly retained such liability under the APA as noted above . . . ."); *Deluca v. Portland Orthopaedics Ltd.*, No. 2:15-cv-05562, 2017 WL 6001781, at *5 (E.D.N.Y. Dec. 2, 2017) ("The Agreement makes clear that [the successor] expressly rejected all [the predecessor's] liabilities, including tort liability prior to the effective date of the Agreement.").

Ignoring the actual terms of the SPA, Lynx points instead to an SEC filing characterizing the agreement, in which Rithm stated that "the SPA caused it to 'acquire all of the assets and liabilities of Caliber.'" Am. Compl. ¶ 104. What Lynx elides is that the SEC filing it refers to is an Unaudited Pro Forma Financial Statement. When read in the context of the terms of the SPA, it is clear that statement, and the sentence it quotes from, is referring to *balance sheet* assets and

9

liabilities, rather than liabilities for claims. *See* Ex. 3 (Unaudited Pro Forma Financial Statement).[5]

Unlike a balance sheet liability—which is simply the financial obligations a company owes to others—a liability related to a legal claim must be included in a financial statement only if it is probable and the amount can be reasonably estimated. *See*, *e.g.*, *In re Perrigo Co. PLC Sec. Litig.*, 435 F.Supp.3d 571, 582 (S.D.N.Y. 2020) ((explaining that a legal liability does not need to be disclosed in a financial statement unless its occurrence is both probable and the amount of loss can be reasonably estimated) (quoting Accounting Standards Codification 450-20-25-2)).  Given the absence of any proof that Caliber faced a probable legal claim with an estimated amount of loss at the time the Unaudited Pro Forma Financial Statement was filed, the reference to Caliber's "liabilities" clearly was to the accrued financial obligations it owed to third parties.

Moreover, the Unaudited Pro Forma Financial Statement makes clear that its purpose is to represent the "financial position and results of operations of the company," rather than the legal effects of Rithm's acquisition of Caliber, as Lynx is arguing.[6]  Lynx also refers to the Unaudited Pro Forma Financial Statement to allege that Rithm assumed $2.4 billion in "Residential mortgage loan repurchase liability" and $1.2 billion in "Accrued expenses and other liabilities."  Am. Compl. ¶ 105.  But again, Lynx does not actually plead—as it cannot—that these balance sheet liabilities include liability for potential future legal claims.

---

[5] The Unaudited Pro Forma Financial Statement may be considered on a motion to dismiss as a document Lynx incorporated into its Amended Complaint by reference.  *See* Am. Compl. ¶¶ 104-05, 136-37; *see also* Fed. R. Evid. 21; *Chambers*, 282 F.3d at 152-54.  In addition, the Unaudited Pro Forma Financial Statement is subject to judicial notice as a document that was publicly filed with the SEC.  *See Kramer*, 937 F.2d at 774.

[6] Lynx also relies on a 10-Q filed by Rithm on June 30, 2022, where Rithm cautions investors that despite its due diligence, Caliber may have some undisclosed liabilities.  *See* Am. Compl. ¶ 106.  Similar to Unaudited Pro Forma Financial Statement, Lynx again misconstrues the purpose of this statement.  The purpose of the statement was to warn investors, not an assumption of liability.

The conclusion that Caliber retained its liabilities following Rithm's acquisition is further buttressed by the requirements for corporate dissolution under Delaware law, as well as Caliber's own plan of corporate dissolution.  On November 1, 2022, Caliber was dissolved in Delaware (where Caliber was incorporated).  *See* Ex. 4 (Certificate of Dissolution).[7]  Under the Delaware Corporate General Law, all corporations that are dissolved are required to continue to exist for at least three years from the date of dissolution for, among other reasons, "the purpose of prosecuting and defending suits" and "to discharge their liabilities."  Del. Code Ann. tit. 8, § 278.  Notably, Lynx does not dispute that Caliber continues to exist, despite its plan for dissolution.  *See* Am. Compl. ¶ 115.  Moreover, in connection with its dissolution and pursuant of the requirement of Delaware law, Caliber maintains assets specifically for the purpose of satisfying judgments from claims.  Ex. 2 § 4(a)(iii); Del. Code Ann. tit. 8, § 278.  Thus, not only does Caliber remain as an existing entity that can be sued, but it also has set aside funds that "ensure that a source remains to pay for the victim's injuries."  *City of New York v. Charles Pfizer & Co., Inc.*, 260 A.D.2d 174, 175-76 (1st Dep't 1999); *see Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834, 839-40 (S.D.N.Y. 1977) (Where "there is a real possibility that the creditors of [the predecessor] have been left without a remedy as a result of the sale", "a finding of an implied assumption is more likely than in a case where the predecessor corporation continues as a viable corporate entity.").

Insofar as Lynx relies on the Unaudited Pro Forma Financial Statement to allege that Rithm impliedly assumed liability, such allegations also fall short.  In determining whether there is an implied assumption of liability, a court will consider factors such as "conduct or representations

---

[7] Caliber's Certificate of Dissolution is subject to judicial notice as a publicly filed document.  *See Kramer*, 937 F.2d at 774; *see also Town of New Windsor v. Avery Dennison Corp.*, No. 10–CV–8611, 2012 WL 677971, at *6 (S.D.N.Y. Mar. 1, 2012) (holding that a certificate of dissolution was a document "capable of accurate determination by resort to sources the accuracy of which cannot reasonably be questioned" and therefore subject to judicial notice).

11

of the buyer indicating such an intent, including admissions of liability by officers or other spokesmen of the buyer, and the effect of the transfer upon creditors of the seller corporation." *Marenyi v. Packard Press Corp.*, No. 90–CV–4439, 1994 WL 16000129, at \*6 (S.D.N.Y. June 9, 1994).  Indeed, the effect of the transfer on creditors is particularly important as the concern is that the creditors will be left without remedy.  *See Ladjevardian*, 431 F. Supp. at 839-40 ("One of the facts to be considered is the effect of the transfer upon creditors of the predecessor corporation."); *see also* 15 Fletcher's Cyclopedia Corporations § 7124.  A finding of an implied assumption is "more likely" where the predecessor corporation becomes a "mere shell" after the acquisition, "out of concern that creditors of the predecessor will otherwise be 'left without a remedy as a result of the sale.'" *Shaoxing Daqin Import & Export Co., Ltd. v. Notations, Inc.*, No. 19-cv-2732, 2019 WL 4198767, at \*2 (S.D.N.Y. July 30, 2019) (quoting *Ladjevardian.*, 431 F. Supp. at 839-40).

Here, however, Caliber is an entity that remains responsible for its own liabilities and maintains its own funds to satisfy such liabilities.  Lynx does not and cannot claim that Caliber is a "mere shell" of Rithm and is completely silent as to the effect of Rithm's acquisition on Caliber's creditors.

For all of these reasons, Lynx's successor liability claims based on a theory of explicit or implicit assumption of liabilities against Rithm should be dismissed.

### ii.    *Lynx Has Not Adequately Pleaded That NewRez Expressly Or Impliedly Assumed Caliber's Liabilities.*

Lynx's attempt to hold Rithm's subsidiary NewRez responsible for Caliber's liabilities on a theory of express or implied assumption of liability fares no better.  Lynx's theory is that, in order to "continue Caliber's operations, NewRez assumed the liabilities necessary to operate Caliber's mortgage origination and servicing business." *Id.* ¶¶ 111, 138; *see also id.* ¶ 139.  This theory heavily relies on mischaracterizing statements made by Rithm in its investor presentations

and SEC filings, including a press release in which it indicated it would "combine New[R]ez and Caliber platforms into [a] premier financial services company" and that Rithm expected synergies between the two companies.  Am. Compl. ¶¶ 108-110.  But Lynx's allegations are plainly insufficient to demonstrate that NewRez intended to assume its predecessors' liabilities.[8]

In assessing implied assumption of liabilities, courts will typically consider the conduct and representations of the *buyer* demonstrating intent to assume such liabilities.  *Marenyi*, 1994 WL 16000129, at *6).  Here, Rithm purchased Caliber's stock, and Lynx makes sweeping allegations about Rithm's purported merging of its businesses.  But Lynx is seeking to hold *NewRez* liable, and the Amended Complaint does not identify any conduct by *NewRez* that could give rise to an implied assumption of liability.  In light of this mismatch, Lynx's conclusory statements are ultimately nothing more than a "formulaic recitation of the elements of a cause of action" and fall far short of raising the implication that NewRez assumed Caliber's liabilities.  *Ashcroft*, 556 U.S. at 678.

Moreover, a key factor in the implied assumption analysis is the effect that a transfer would have on the predecessor's debtors.  *See Ladjevardian*, 431 F. Supp. at 839 (indicating that the key factor is the impact on predecessor's creditors).  That factor weighs against finding that NewRez implicitly assumed Caliber's liabilities.  As discussed above, Caliber still exists and remains responsible for its own debts.  *See* Section II.B; *see also* Del. Code Ann. tit. 8, § 278.  Caliber's continued existence would accordingly satisfy any concerns about whether "a source remains to pay for the victim's injuries."  *Charles Pfizer*, 260 A.D.2d at 175-76.

---

[8] For example, Lynx describes Rithm's statement that "[t]he results of Caliber's operations have been included in the Company's Consolidated Statements of Income" as evidence of a "consolidation reflect[ing] the functional unification of the two businesses under [Rithm's] financial reporting."  Am. Compl. ¶ 110.

Thus, to the extent that Lynx seeks to hold NewRez responsible under a theory of implied assumption of liabilities, such allegations are insufficient, and its claims should be dismissed.

**B.    Lynx Fails To Plead The Continuity Of Ownership Required To Sustain Its *De Facto* Merger And Mere Continuation Theories Of Successor Liability.**

Lynx also pleads successor liability under the *de facto* merger and mere continuation exceptions, which treat a successor as liable for its predecessor's debts when the two companies are functionally the same. Because of their similarities, the *de facto* merger exception and mere continuation exception are analyzed together. *See Douglas v. Stamco*, 363 F. App'x 100, 102 (2d Cir. 2010). Under such an analysis, courts consider "whether there was: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Id.*

As recognized by the Second Circuit, the key factor in this test is "continuity of ownership," which "is the essence of a merger." *Id.* Where there is no continuity of ownership, there can be no merger, and the analysis ends there. *See id.* ("[T]he exception cannot apply in [continuity of ownership's] absence."); *see also Battino*, 861 F. Supp. 2d at 401 ("[R]egardless of whether the other de facto merger factors are present, the *de facto* merger and 'mere continuation' exceptions do not apply."). The continuity element is typically satisfied "where the purchasing corporation pays for the acquired assets with shares of its own stock. The seller therefore continues to own the assets it has sold through its ownership of shares in the purchasing corporation." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011).

Here, Lynx alleges in conclusory fashion that Rithm and NewRez, after acquiring Caliber's stock, formed a "combined company" that "maintained continuity of ownership when certain

14

members of Caliber exchanged their ownership interests for interests in New Residential and/or NewRez." Am. Compl. ¶ 139. The SPA, however, establishes that there is no continuity of ownership between Caliber's previous owner (LSF Pickens) and Rithm. Lynx's conclusory statements to the contrary fail to sustain a successor liability theory against Rithm or NewRez.

### i. There Is No Continuity Of Ownership Between Caliber's Previous Owners And Rithm.

There is no continuity of ownership between LSF Pickens and Rithm. Indeed, Lynx concedes as much, alleging in its Amended Complaint that "[t]he SPA expressly transferred complete ownership and control of Caliber to [Rithm]." Am. Compl. ¶ 103; *see Priestley*, 647 F.3d at 506 ("The facts alleged, however, are not only inadequate to support such a conclusion, they contradict it."). Lynx could not deny that the termination of LSF Pickens' ownership of Caliber is evidenced by the terms of the SPA that the parties entered into.

Moreover, Rithm paid ***cash*** for the purchase of Caliber's common stock. Ex. 1 § 2.3. Courts routinely find no continuity of ownership where there was a cash purchase. *See Descalfani v. Pave-Mark Corp.*, No. 07 Civ. 4639, 2008 WL 3914881, at *4-5 (S.D.N.Y. Aug. 22, 2018) (noting that "[n]umerous courts have held that [the continuity-of-ownership] factor is not satisfied where the assets are purchased solely with cash and, thus, none of the predecessor corporation's shareholders become shareholders of the successor corporation as a result of the asset purchase[,]" and collecting cases); *see also Jasper & Black, LLC v. Carolina Pad Co., LLC*, No. 10 Civ. 3562, 2012 WL 413869, at *8 (S.D.N.Y. Feb. 9, 2012) ("In particular, Plaintiff fails to allege that Carolina Pad purchased Libretto with shares of stock and, in fact, the [] Asset Purchase Agreement explicitly states that [the alleged successor] purchased [] assets with cash."); *Doktor v. Werner Co.*, 762 F. Supp. 2d 494, 499 (E.D.N.Y. 2011) ("Continuity of ownership exists where shareholders of the selling corporation become direct or indirect shareholders of the purchasing

15

corporation.  Such common ownership does not exist where, as here, there is a sale of assets for cash."). This is because "ownership of a corporation rests with the shareholders," and an acquisition where the seller does not receive payment in the form of stock will not preserve continuity of ownership. *Priestley*, 647 F.3d at 506; *see Nat'l Serv. Indus.*, 460 F.3d at 209-10 & n.2 ("The continuity-of-ownership element typically is satisfied where the purchasing corporation pays for the acquired assets with shares of its own stock.  The seller therefore continues to own the assets it has sold through its ownership of shares in the purchasing corporation."  (citation omitted)).  As established by the SPA, there was no continuity of ownership between Rithm and LSF Pickens.

Despite the terms of the SPA, Lynx nonetheless makes the conclusory allegation, upon unspecified "information and belief," that "certain executives and other equity holders of Caliber exchanged their Caliber equity interests—whether in the form of stock, stock options, or other ownership rights—for shares or equity-linked compensation in New Residential and/or NewRez." Am. Compl. ¶ 113.  These allegations are, first and foremost, belied by the actual terms of the SPA between Rithm and LSF Pickens. *See Jasper & Black*, 2012 WL 413869, at *8 (dismissing claims where successor liability allegations were undermined by terms of agreement).  But even setting that aside, Lynx's conclusory allegations upon information and belief do not adequately plead continuity of ownership. *Compare John Deere Shared Servs., Inc. v. Success Apparel LLC*, No. 15–CV–1146, 2015 WL 6656932, at *1, *7 (S.D.N.Y. Oct. 30, 2015) (allowing successor liability theory to proceed where plaintiff alleged ongoing quarterly earn-out payments).

In addition, Lynx's allegations are also undermined by the fact that Caliber still exists and is a defendant in this case. *See Klumpp v. Bandit Indus., Inc.*, 113 F. Supp. 2d 567, 572-73 (W.D.N.Y. 2000) ("Furthermore, not only does [the predecessor] continue to exist, the company

16

is named as a defendant in the present action ….").  Indeed, "the rationale for the merger exception is the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities' to ensure that a source remains to pay for the victim's injuries."  *Klumpp*, 113 F. Supp. 2d at 573 (citation modified).  Caliber's status as a defendant in this case demonstrates that there is no concern over whether an entity remains to satisfy a plaintiff's damages.  *See City of New York*, 260 A.D.2d at 175-76.  Accordingly, Lynx's successor liability theory against Rithm should be dismissed because there is no continuity of ownership.

### ii.    There Is No Continuity Of Ownership Between Caliber And NewRez.

Lynx also fails to plead continuity of ownership for its successor liability theory against NewRez.  NewRez was not involved in any way in the SPA and did not purchase any of Caliber's assets.  *See* SPA.  NewRez is simply a preexisting subsidiary of Rithm.  Nonetheless, Lynx insists that, based on Rithm's investor presentations and SEC filings, Rithm integrated NewRez and Caliber "through a *de facto* merger" that took place after the acquisition.  Am. Compl. ¶ 107.  Despite these conclusory allegations, Lynx fails to point to *anything* that would indicate continuity of ownership between Caliber and NewRez.

Lynx makes much more of the statements made by Rithm in its investor presentations and SEC filings to support its successor liability theory against NewRez.  For instance, Lynx points to Rithm's investor presentation where it indicated that it had "completed key steps toward operational integration," that there was a "unified leadership team drawn from executives at both NewRez and Caliber," and that NewRez and Caliber were "[f]unctionally integrated."  Am. Compl. ¶¶ 112, 114.  Lynx also points to SEC filings in which Rithm purportedly indicated that "all of Caliber's operations were integrated into NewRez."  *Id.* ¶ 115.  In addition, Lynx references Caliber's LinkedIn page and alleges that Caliber and NewRez share a licensing number on the Nationwide Multistate Licensing System.  *Id.* ¶ 116.  At most, these allegations indicate

17

overlapping operations between two subsidiaries of the same parent. They do not show the kind of continuity of ownership relevant to the successor liability doctrine, namely, that Caliber's former owners continue to have an ownership stake in NewRez.

The sole allegation that can even be considered related to Caliber's continued ownership in NewRez boils down to the conclusory statement that "certain executives and other equity holders of Caliber exchanged their Caliber equity interests—whether in the form of stock, stock options, or other ownership rights—for shares or equity-linked compensation in New Residential and/or NewRez." Am. Compl. ¶ 113. This allegation amounts to nothing more than a threadbare assertion of continuity of ownership. *See Ashcroft*, 556 U.S. at 678. Indeed, Lynx would have had to allege that there was some agreement between LSF Pickens and NewRez that would allow LSF Pickens to have a continued ownership interest in the form of stock in NewRez. But Lynx makes no such allegations because the only agreement that governs the transfer of ownership is the SPA, and it does not speak to NewRez. *See* Ex. 1.

Given that Lynx fails to plead facts suggesting that there is continuity of ownership among the owners of Caliber and NewRez, Lynx's successor liability claims against NewRez must also fail. For without continuity of ownership, there can be no *de facto* merger, and the analysis ends there. *See Battino*, 861 F. Supp. 2d at 401 ("[R]egardless of whether the other de facto merger factors are present, the *de facto* merger and 'mere continuation' exceptions do not apply.").

## CONCLUSION

For all the foregoing reasons, Rithm and NewRez respectfully request that this Court grant their Motion and dismiss the claims against them with prejudice.

18

Dated:  November 10, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By:/s/ *Richard A. Jacobsen*
 Richard A. Jacobsen
 Thomas N. Kidera
 ORRICK, HERRINGTON & SUTCLIFFE LLP
 51 West 52nd Street
 New York, NY 10019
 Telephone: (212) 506-5000
 Emails:  rjacobsen@orrick.com
   tkidera@orrick.com

 Aaron M. Rubin
 ORRICK, HERRINGTON & SUTCLIFFE LLP
 2050 Main Street
 Suite 1100
 Irvine, California 92614
 Telephone: (949) 567-6700
 Email:  amrubin@orrick.com

 *Attorneys for Defendants New Residential Investment Corp. and NewRez LLC*

19