UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
LYNX WHOLE LOAN ACQUISITION LLC,

plaintiff,

- against -

CALIBER HOME LOANS, INC.; NEW RESIDENTIAL INVESTMENT CORP. (n/k/a/ RITHM CAPITAL CORP.); and NEWREZ LLC,

defendants,

----------------------------------------X

CALIBER HOME LOANS, INC.,

counterclaim-plaintiff,

- against -

LYNX WHOLE LOAN ACQUISITION LLC and ALLIED FIRST BANK, S.B.,

counterclaim-defendants.

----------------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 2948 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is counterclaim-defendant Allied First Bank, S.B.'s ("Servbank") motion to dismiss the counterclaims against it brought by defendant and counterclaim-plaintiff Caliber Home Loans, Inc. ("Caliber") under Federal Rule of Civil Procedure 12(b)(6). ECF No. 69 ("Mot."). Caliber brings counterclaims against Servbank for conversion and unjust enrichment relating to Servbank's alleged failure to reimburse

Caliber for certain "unpaid servicing advances" assertedly related to a contractual agreement between Caliber and plaintiff/counter-claim defendant Lynx Whole Loan Acquisition LLC ("Lynx"). ECF No. 31 ("Counterclaims") ¶¶ 243-49, 255-259. For the following reasons, the Court denies Servbank's motion to dismiss.[1]

**BACKGROUND**

In December 2020, Lynx purchased $1.769 billion of mortgage loans from Caliber pursuant to a "Mortgage Loan Purchase, Sale, and Servicing Agreement." Counterclaims ¶ 170; ECF No. 15 ("AC") ¶ 2; ECF No. 33-1 (the "Agreement").[2] Under the Agreement, Caliber agreed to continue to "service" the loans, after the sale to Lynx. Counterclaims ¶¶ 156, 171; AC ¶¶ 23-24. Caliber also agreed to "advanc[e] certain costs to preserve the value of the collateral securing the loan." Counterclaims ¶ 164. These costs, referred to as "Servicing Advances," included payments for, inter alia, property taxes, maintenance and repair, and foreclosure fees and costs. Id. ¶¶ 165, 184.

The Agreement accounted for two types of Servicing Advances: "Escrow Advances" and "Corporate Advances." Counterclaims ¶¶ 188-89. Escrow Advances were defined in the Agreement to mean any "payment of funds made by or on behalf of the Mortgagees . . .

---

[1] Caliber has also asserted counterclaims against Lynx. However, while Lynx and Servbank are represented by the same counsel, the motion to dismiss is made only on behalf of Servbank. Mot. at 1.

[2] Servbank is not a party to the Agreement.

that, if not timely paid, may become a lien upon the Mortgaged Property." ECF No. 78 ("Opp.") at 4 (citing Agreement § 1.01). Corporate Advances were defined to mean any payments made "in connection with (a) the inspection, management, marketing, maintenance, preservation, restoration or sale" of the property or (b) any "Foreclosure Action, bankruptcy case, insolvency proceeding, or other legal proceeding" related to the property. Id.

### A. Termination of the Agreement

Over the course of 2022, the relationship between Lynx and Caliber deteriorated, leading to Caliber's resignation as servicer of the loans. Counterclaims ¶¶ 193-95. Following Caliber's resignation, Lynx appointed Servbank as the "Successor Servicer" on December 16, 2022. Id. ¶¶ 183, 194-95. On March 3, 2023, Caliber completed its transfer of "Servicing Rights" under the Agreement to Servbank. Id. ¶ 198. Caliber alleges that it also provided Servbank with the necessary information to track and collect repayment of unpaid Servicing Advances. Id. ¶¶ 210-13.

According to Caliber, at the time of its resignation as Servicer, it "had incurred $3,231,447 in Escrow Advances and $2,815,534 in Corporate Advances on Lynx's behalf-$6,047,981 in total" (the "Unpaid Servicing Advances"). Opp. at 4 (citing Counterclaims ¶¶ 209, 212).

Caliber alleges that prior to its resignation, it had a "unilateral right . . . to recoup its Corporate Advances," but after its resignation, Caliber was required to transfer control of the Custodial and Escrow Accounts to Servbank, which it did. Id. at 4-5 (citing Counterclaims ¶¶ 212-16). After completing the transfer of the Accounts, Caliber sent Lynx an invoice for the Unpaid Servicing Advances, as well as the information required for reimbursement under the Agreement. Counterclaims ¶ 213. The invoice, Caliber alleges, triggered a thirty-day deadline for Lynx to reimburse Caliber for the Escrow Advances under the Agreement. Id. However, according to Caliber, Lynx refused to remit payment to Caliber for the Unpaid Servicing Advances, which Caliber contends is a "direct violation of Section 24.07(d)" of the Agreement. Counterclaims ¶ 214.

The precise reason why Lynx has refused to reimburse Caliber is not clear. Caliber contends that "in response to the Counterclaims Lynx denied that the Agreement governs reimbursement of Unpaid Servicing Advances after termination of a Servicer and transfer of Servicing Rights." Opp. at 5 (citing ECF No. 40 ¶¶ 209-16). For this proposition, Caliber relies on Lynx's denial of certain paragraphs in Lynx's Answer to the counterclaims, as well as Lynx's failure to "dispute the characterization of Lynx's position made in Caliber's pre-motion letter, which laid out Caliber's understanding that 'Lynx has not acknowledged that the

Agreement governs its responsibility for the Servicing Advances.'" Opp. at 5 n.1 (citing ECF No. 52 at 2).

Servbank, on the other hand, asserts that "Caliber alleges that the agreement sets the rules for servicing advance reimbursement, and Caliber and Lynx agree that the agreement, as a general matter, is valid and enforceable." Mot. at 1. Notably, despite being represented by the same counsel as Lynx, at no point does Servbank expressly state that either Servbank or Lynx agree that the Agreement specifically governs the reimbursement of servicing advances, stating instead the ambiguous proposition that the Agreement, "as a general matter," is enforceable.

**B. Procedural History**

Lynx filed its initial complaint on April 9, 2025, initially alleging two claims for breach of contract against Caliber. ECF No. 1. Caliber filed an answer to the complaint on June 9, 2025, and asserted counterclaims against Lynx for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and attorneys' fees. ECF No. 13. In the same pleading, Caliber asserted counterclaims against Servbank for conversion and unjust enrichment on the basis that the Unpaid Servicing Advances were placed in the custody and control of Servbank and have not been returned. Id. ¶¶ 215-21, 227-31. Subsequently, Lynx filed an amended complaint, ECF No. 15, and Caliber filed an answer to the amended complaint, asserting the

same counterclaims against Servbank, Counterclaims ¶¶ 243-49, 255-59. Both of Caliber's counterclaims against Servbank assert that they are "pleaded in the alternative . . . to Caliber's foregoing Causes of Action relating to the Unpaid Servicing Advances." Counterclaims ¶¶ 244, 256. On November 10, 2025, Servbank filed the instant motion to dismiss the counterclaims against it. ECF No. 68-69. Caliber filed its opposition on December 2, 2025, ECF No. 78, and the motion was fully briefed on December 12, 2025. ECF No. 85 ("Reply").

**LEGAL STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the non-movant's favor. Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

At the outset, it should be noted that Servbank does not dispute that Caliber has sufficiently pled the elements of a traditional unjust enrichment or conversion claim. Instead, Servbank argues that Caliber's counterclaims must be dismissed because quasi-contractual claims such as unjust enrichment and conversion claims cannot be brought when a contract governs the subject matter in dispute.

Generally, "[t]he existence of a valid contract precludes quasi-contract claims, because they serve as equitable remedies that operate where no valid contract exists." Tech+IP Advisory, LLC v. Blackberry Ltd., 2024 WL 4167501, at *10 (S.D.N.Y. Sep. 12, 2024) (citations and quotation marks omitted) (alteration in original); see also, e.g., Rensselaer Polytechnic Institute v. Varian, Inc., 340 Fed. Appx. 747, 749 (2d Cir. 2009) (Claims in "quasi contract . . . do[] not lie where . . . there is a valid contract between the parties respecting the matter at issue."). Thus, when a contract governs the disputed subject matter, courts generally dismiss unjust enrichment claims as duplicative of breach of contract claims. See, e.g., CBS Broad. Inc. v. Jones, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006) (dismissing unjust enrichment claim because "there is a valid and enforceable contract

between the parties, and the subject matter of the unjust enrichment claim is covered by the contract.”). These principles apply as well to claims for unjust enrichment and conversion. See Physicians Mut. Ins. Co. v. Greystone Servicing Corp., 2009 WL 855648, at *10 (S.D.N.Y. Mar. 25, 2009) (“Even if a plaintiff meets all of the elements of a conversion claim, . . . the claim will still be dismissed if it is duplicative of a breach of contract claim.”); Stifel, Nicolaus & Co., Inc. v. Shift Techs., Inc., 2022 WL 3648145, at *6 (S.D.N.Y. Aug. 23, 2022) (dismissing unjust enrichment claims as “barred by the existence of a contract” where there was “no question that the [contract] applie[d] to govern the subject matter of the dispute”).

However, “a party will not be required to elect his or her remedies and may proceed on both quasi contract and breach of contract theories” if “there is a bona fide dispute as to the existence of a contract or whether the scope of an existing contract covers the disagreement between the parties.” Pauwels v. Deloitte LLP, 83 F.4th 171, 188 (2d Cir. 2023).

These principles apply equally to claims brought against defendants who are not party to the contract at issue. See Mueller v. Michael Janssen Gallery Pte. Ltd., 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) (“Numerous decisions applying New York law have held that an unjust enrichment claim is barred if there is a valid contract governing the subject matter of the dispute, even if one

of the parties to the claim is not a party to that contract.") (collecting cases).

## I. A Dispute Exists as to the Applicability of the Agreement

In this case, "there is a dispute regarding whether the Agreement[] govern[s] this dispute[.]" Trahan v. Lazar, 457 F. Supp. 3d 323, 360 (S.D.N.Y. 2020). Caliber maintains that "Lynx has refused to acknowledge that the Agreement governs reimbursement." Opp. at 8. In contrast, Servbank relies on the statement that the Agreement "as a general matter, is valid and enforceable." Mot. at 1. The broad acknowledgment that there is a valid and enforceable agreement between Caliber and Lynx is insufficient to dismiss Caliber's claims against Servbank at this stage of the litigation. As the Second Circuit has made clear, "a party . . . may proceed on both quasi contract and breach of contract theories" if "there is a bona fide dispute as to . . . whether the scope of an existing contract covers the disagreement between the parties." Pauwels, 83 F.4th at 188 (emphasis added).

Here, Lynx has had every opportunity -- including in connection with this motion brought by its own counsel on behalf of Servbank -- to state unambiguously that the Agreement governs the reimbursement of the Unpaid Servicing Advances. Tellingly, it has not done so. To dismiss Caliber's claims against Servbank at this stage would allow Lynx to remain silent as to the Agreement's applicability to the subject matter of this dispute but later

insist that the Agreement in fact does not govern reimbursement. The Court does not suggest that Lynx intends to proceed in that manner, but the fact remains that without Lynx's unequivocal acknowledgement that the Agreement governs this particular dispute and that Servbank or Lynx would be responsible for reimbursement of any such fees advanced by Caliber as proven in this case, Caliber's counterclaims cannot be dismissed at this stage.[3]

Servbank seeks to avoid this conclusion by emphasizing that "Caliber has pled that a valid and enforceable contract with Lynx entitles it to recoup the servicing advances[.]" Mot. at 2; see also id. at 5 (the claims "should be dismissed based on Caliber's own allegations that its Agreement with Lynx controls entitlement to the servicing advances at issue."). Servbank argues that "Caliber cannot escape dismissal by . . . casting doubt on the viability of its own breach of contract claim against Lynx." Id. at 10. However, Caliber is not "cast[ing] doubt on the viability of its own breach of contract claim," it is simply pointing out that a dispute does, in fact, exist. It is not inconsistent for Caliber to maintain that the Agreement governs this subject matter

[3] It is notable that in a teleconference held on October 23, 2025 to discuss the parties' anticipated motions to dismiss, the Court suggested to counsel for Servbank and Lynx that this motion might be rendered unnecessary if the parties were to enter into a stipulation confirming that in the event Caliber succeeded on its claims relating to the Unpaid Servicing Advances, an entity, be it Lynx or Servbank, would satisfy the judgment. When no such stipulation was forthcoming, motion practice proceeded without any unambiguous statement from Lynx that the Agreement governed the reimbursement of the Unpaid Servicing Advances.

while simultaneously noting that Lynx disputes the applicability of the Agreement to this specific issue.

The cases cited by Servbank do not compel the opposite conclusion. Servbank points to several decisions by this Court in which we dismissed claims for unjust enrichment and conversion on the basis that they were duplicative of breach of contract claims. See Mueller v. Michael Janssen Gallery Pte. Ltd., 225 F. Supp. 3d 201, 207-08 (S.D.N.Y. 2016); Tech+IP Advisory, LLC v. Blackberry Ltd., 2024 WL 4167501, at *10 (S.D.N.Y. Sep. 12, 2024); Stifel, Nicolaus & Co., Inc. v. Shift Techs., Inc., 2022 WL 3648145, at *6 (S.D.N.Y. Aug. 23, 2022). However, those cases are not to the contrary. In those cases, unlike the case at bar, the Court dismissed quasi-contract claims when there was no question that the contract governed the dispute at issue, and thus there was no bona fide dispute about the applicability of the contract. See Mueller, 225 F. Supp. 3d at 208 ("The Agreement clearly governs the subject matter at issue[.]"); Tech+IP, 2024 WL 4167501, at *11 ("[P]laintiff's quasi-contract claims are dismissed to the extent that they 'duplicate' its breach of contract claims."); Stifel, 2022 WL 3648145, at *6 ("Here, there is no question that the Engagement Letter applies to govern the subject matter of the dispute[.]").[4]

[4] Servbank also cites to this Court's opinion in Physicians Mut. Ins. Co. v. Greystone Servicing Corp., 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009). Physicians Mutual did not explicitly address whether there was any dispute as

Servbank argues on reply that "under Pauwels, this Court must accept as true Caliber's allegation that the Agreement covers Caliber's entitlement to servicing advances." Reply at 7. Pauwels, however, does not stand for that proposition. In Pauwels, the plaintiff argued that the governing contract did not apply to the relevant dispute, so the Second Circuit did not have occasion to consider whether quasi-contract claims could be pled in the alternative when a plaintiff alleges that a contract governs but nonetheless maintains that the applicability of the contract to the dispute is contested. See Pauwels, 83 F.4th 171 at 187. In other words, while Pauwels was explicit that "a party . . . may proceed on both quasi contract and breach of contract theories" when "there is a bona fide dispute as to . . . whether the scope of an existing contract covers the disagreement between the parties," id. at 188, it did not go further and hold that quasi-contract claims must be dismissed when the plaintiff alleges that a contract governs the dispute.

A recent case from this district applying Pauwels, Celebrity Fund Management, LLC v. Humans, Inc., is instructive. 2025 WL

---

to the applicability of the contract to the subject matter in dispute. Instead, the Court dismissed the plaintiff's conversion claim because "the same facts that provide the basis for plaintiffs' contract breach claim make up their conversion claim, and plaintiffs seek the same relief for both claims." Id. at *10. A review of the parties' briefing in Physicians Mutual reveals that no party raised any dispute about the applicability of the contract to the subject matter at issue in the plaintiff's conversion claim. See Physicians Mut. Ins. Co. v. Greystone Servicing Corp., No. 07-cv-10490, ECF Nos. 36 at 4-7, 37 at 9-10, 38 at 4. Thus, Physicians Mutual is not on point.

2773288 (S.D.N.Y. Sep. 29, 2025). There, the court first found that the plaintiff had sufficiently alleged both the existence of a contract between the parties and breaches of that contract to proceed past the motion to dismiss. Id. at *5–9. Despite finding that the breach of contract claim could proceed, the court nonetheless went on to consider whether plaintiff had pled a claim for unjust enrichment, specifically noting that "Plaintiff pleads unjust enrichment in the alternative 'anticipating the possibility [that Defendant] might contest the validity of the contract.'" Id. at *11. Citing Pauwels, the court found that the unjust enrichment claim could proceed in the alternative because "although Defendant does not seem to contest the validity of the Services Agreement, it does contest Plaintiff's status as to the agreement and [Defendant's] liability to Plaintiff for breach of contract. On this basis, both Plaintiff's breach of contract and alternative unjust enrichment claim may proceed." Id. Celebrity Fund is analogous to the case at bar where Caliber alleges that the Agreement governs the dispute, but it has nonetheless pled its quasi-contract claims in the alternative in the absence of Lynx or Servbank's acknowledgement that the contract applies to the reimbursement of the Unpaid Servicing Advances and the same result obtains here.[5]

---

[5] See also, e.g., Union Bank, N.A. v. CBS Corp., 2009 WL 1675087, at *8 (S.D.N.Y. June 10, 2009) ("Here . . . it is not appropriate for this Court to rule . . . as a matter of law—that the parties' agreements govern the instant

Finally, it is worth noting that both parties have referenced Lynx Whole Sale Loan Acquisition LLC v. Nationstar Mortgage LLC, No. 2022-1203-LWW (Del. Ch. Ct. 2022). Nationstar is similar to this case in many respects. The Nationstar litigation concerned a similar dispute between Lynx and Servbank on one hand, and another company, Nationstar Mortgage LLC, on the other. As here, Nationstar asserted counterclaims for unjust enrichment alleging that Lynx had instructed Servbank not to remit servicing advances to Nationstar after the termination of a contractual relationship between Lynx and Nationstar. Similarly, Lynx and Servbank asserted that Nationstar's unjust enrichment claim was duplicative of its breach of contract claim and should be dismissed. In an oral order, the Nationstar court denied the motion to dismiss, considering the Second Circuit's instruction that when there is "a bona fide dispute as to whether the contract governed the subject matter underlying [the] claim for unjust enrichment . . . the existence of the contract does not [preclude] the unjust enrichment claim [] at [the] motion-to-dismiss stage." ECF No. 79-1 at 20:17-23 (citing Pauwels, 83 F. 4th 171 at 188).

---

dispute. Although both sides argue that they should prevail under the [contracts] . . . the Court could later conclude that these agreements do not address the events that took place here.") (emphasis added); see also CourtAlert.com, Inc. v. American LegalNet, Inc., 2023 WL 6385964, at *10 (S.D.N.Y. Sep. 29, 2023) (rejecting the argument that an unjust enrichment claim should be dismissed as duplicative because "CourtAlert has yet to indicate whether it will or will not challenge the extent to which the Employment Agreement requires it to pay the commissions . . . if it does 'dispute' whether the 'contract covers' the commissions, then Loeb would be entitled to pursue an unjust enrichment claim in the alternative.").

As Servbank points out, Nationstar applied Delaware law, which differs from the federal pleading standard, and the Nationstar court relied on Delaware precedents, in addition to Pauwels, when sustaining Nationstar's unjust enrichment claim. Reply at 10-11. The Court acknowledges that Nationstar is not binding on this Court. However, the court's conclusion in Nationstar is instructive given the parallels between Nationstar and the case before this Court.

Of course, the merits of Caliber's claims are not presently before the Court. However, to dismiss Caliber's counterclaims today, on the record before the Court, and with the existence of a dispute as to this specific subject matter, would be premature.[6]

## CONCLUSION

For the foregoing reasons, Servbank's motion is denied. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 68.

Dated: August 6, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

[6] In the alternative, Caliber argues that its counterclaims "against Servbank arise from wrongs that are separate and distinct from [Caliber's] contract-based claims against Lynx" and thus should not be dismissed. Opp. at 9-12. Having already determined that there is a dispute concerning the applicability of the Agreement to the reimbursement of the Unpaid Servicing Advances, the Court need not consider this argument at length. The Court will not dismiss Caliber's counterclaims sounding in quasi-contract as duplicative.